# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 968 | **DATE** | 7/14/2004 |
| **CASE TITLE** | Buczkowski, et al. v. Oliva, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Plaintiffs' Motion for Remand

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth in the attached Memorandum Opinion and Order, this court grants plaintiffs' motion for remand (Doc. #3) and remands the case forthwith to the Circuit Court of Cook County. This case is terminated.

(11) [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | date docketed | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | |
| | aed/lc | courtroom deputy's initials | date mailed notice | |
| | | | mailing deputy initials | |

Date/time received in central Clerk's Office

DONALD BUCZKOWSKI and WENDY        )
BUCZKOWSKI,                        )
                                   )
            Plaintiffs,            )
                                   )    No. 04 CV 968
      v.                           )
                                   )    HONORABLE DAVID H. COAR
ELAINE OLIVA AND SUPERIOR BANK     )
FSB,                               )
                                   )
                                   )
            Defendants.            )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Donald and Wendy Buczkowski have filed a motion for remand pursuant to 28

U.S.C. § 1447, which is now before this court. For the reasons set forth below, the motion is

granted, and the case is remanded to the Circuit Court of Cook County.

**I.      Background[1]**

**A.      Early Litigation of the State Court Case**

In April 1999, plaintiffs filed a negligence action against Elaine Oliva and Dollar Rent A

Car System, Inc. ("Dollar") in the Circuit Court of Cook County for alleged injuries resulting

from a March 1998 motor vehicle collision between Oliva and Donald Buczkowski. Plaintiffs

allege that Oliva struck Buczkowski on his motorcycle while she was driving an automobile

rented to her by Dollar.

In March 2000, plaintiffs added an additional count alleging *respondeat superior* against

---

[1] The parties do not dispute most of the operative facts forming the background for this court's
disposition of plaintiffs' motion (and any relevant disagreement is noted herein).

Superior Bank, FSB ("Superior"), Oliva's employer on the date of the collision. The parties

litigated the case for more than four years and completed discovery.

In November 2003, the court dismissed Dollar from the case on a motion for summary

judgment. The case was assigned out for trial on November 12, 2003.

**B.     The FDIC's July 2001 Appointment As Receiver for Superior and the
        November 2003 Notice to Plaintiffs of the Same**

In late October 2003, counsel for Oliva and Superior told plaintiffs' counsel that Superior

might no longer exist because of bankruptcy or liquidation. On November 12, 2003, the date on

which the trial was scheduled to begin, Superior's counsel informed the court and plaintiffs'

counsel that Superior had indeed been liquidated and the Federal Deposit Insurance Corporation

("the FDIC") appointed as its Receiver. The court continued the case to November 26, 2003 and

ordered defense counsel to report back at that time as to Superior's status.

On November 18, 2003, the FDIC sent a letter to plaintiffs' counsel informing him that

the FDIC had been appointed as Receiver for Superior nearly two and a half years earlier, on July

27, 2001. In fact, by an Order issued on that date, the Director of the Office of Thrift

Supervision ("OTS"), in connection with the FDIC, had determined that the FDIC would serve as

Superior's Receiver. By a letter dated the same day (July 27, 2001), the FDIC had accepted the

appointment and thereby succeeded to all rights, titles, powers and privileges of Superior

pursuant to 12 U.S.C. § 1821(c)(3)(A).

In its November 18, 2003 letter, the FDIC also represented that it had first learned of the

existence of the Buczkowskis' lawsuit only the previous week. Pl. Exh. B. The FDIC has

maintained that position in its briefing on plaintiffs' instant motion for remand. On November

18, 2003, the FDIC also sent a letter to plaintiffs notifying them of the requirement that they submit a Proof of Claim Form and accompanying documentation to the FDIC in the event that they had claims against Superior. *Id.*

### C. Plaintiffs' Filing of Administrative Claims with the FDIC and Related Communications

After being informed on November 18, 2003 of the FDIC's July 2001 appointment as Receiver for Superior, plaintiffs subsequently filed administrative claims with the FDIC on December 10, 2003. *See* 12 U.S.C. § 1821(d)(3)-(13) (establishing claims procedure for all claims asserted against the assets of a failed financial institution). On that date, they also submitted an additional proposed agreement by which any recovery in the case would be limited to an amount within Superior's liability insurance policy limits ($25,000,000). Plaintiffs also offered to provide the FDIC with a covenant not to execute any judgment against Superior or the FDIC so as to remove any need for the FDIC to participate or cause any delay, generally.

### D. Superior's Subsequent Motion to Dismiss

On November 19, 2003, one day after plaintiffs were formally notified of Superior's receivership, Superior filed a motion to dismiss. In it, Superior argued that the FDIC's appointment as Receiver two years earlier required Superior's dismissal from the case because, due to the July 27, 2001 Order and the FDIC's acceptance of its appointment, Superior was a non-entity, and the FDIC was the real party in interest and the only proper defendant *vis a vis* plaintiffs' claims against Superior. *See* Pl. Exh. C. The court continued the trial and the motion to dismiss and, on January 22, 2004, denied the motion to dismiss. In reaching its decision, the court also found that it was not stripped of jurisdiction by the pendency of plaintiffs'

administrative claims with the FDIC.

Two weeks later, on February 5, 2004, the FDIC filed a petition to intervene in the state court case. The next day, it filed an amended petition, along with which it submitted its "initial pleading" in the case – a motion to dismiss pursuant to 735 ILCS 5/2-615 and 5/2-619. In its motion to dismiss, the FDIC argued that: (1) Superior must be dismissed because plaintiffs could not recover from a failed banking institution in receivership; (2) the FDIC must be dismissed on account of plaintiffs' failure to exhaust their administrative remedies; and (3) the FDIC must be dismissed because plaintiffs' claims were under administrative review and their administrative claims and the state court case could not properly proceed at the same time.

### E.     The FDIC's Removal of the Case and Plaintiffs' Motion for Remand

On February 6, 2004, the FDIC as Receiver for Superior filed a notice of removal, pursuant to 28 U.S.C. § 1441(b) and 12 U.S.C. § 1819(b)(2)(B). On March 8, 2004, plaintiffs filed the instant motion for remand. In their motion, plaintiffs argue that the FDIC's removal of the case was defective in that it was untimely. In that vein, plaintiffs contend that the ninety-day limitations period governing the FDIC's removal of the case (as set forth in section 1819(b)(2)(B)) began to run in July 2001 upon its appointment as Superior's Receiver.

The FDIC filed a response brief objecting to plaintiffs' motion for remand. The FDIC contends that plaintiffs' motion must be denied because: (1) it has established this court's jurisdiction; (2) its notice of removal was timely filed; and (3) due to plaintiffs' failure to exhaust their administrative remedies, neither the federal court nor the state court has jurisdiction over the claims against Superior and the FDIC, so remand of those claims would be inappropriate and, instead, dismissal is appropriate.

-4-

## II. Analysis

### A. Standards Governing Removal

The FDIC removed this case pursuant to 28 U.S.C. § 1441(b) and the Financial Institution Reform, Recovery, and Enforcement Act of 1989, Pub. L. No. 101-73, § 209, 103 Stat. 183, *et seq.* ("FIRREA").[2] Section 1441(b) provides that, "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Any civil suit in which the FDIC, in any capacity, is a party is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). Pursuant to FIRREA, the FDIC has the right to remove cases to which it is a party from state court to the appropriate United States District Court. *See* 12 U.S.C. § 1819(b)(2)(B).

Prior to the enactment of FIRREA, the time period for the FDIC to remove cases to which it was a party was determined exclusively by 28 U.S.C. § 1446(b), which sets forth the general procedure for removal. That provision contains a thirty-day limitations period on removal.[3] However, FIRREA established a limitations period and other requirements specifically applicable to the FDIC's removal of state court actions to which institutions in receivership are or

---

[2] In pertinent part, FIRREA generally established the rights and duties that govern the receivership of a failed banking institution and conferred broad jurisdiction to the federal courts over matters concerning the FDIC.

[3] It provides, "The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter. If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." 28 U.S.C. § 1446(b).

-5-

become parties. The applicable statute, which was amended in December 1991,[4] provides,

> [The FDIC] may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against [the FDIC] or [the FDIC] is substituted as a party.

12 U.S.C. § 1819(b)(2)(B). As set forth below in subsection (C), there is a circuit split concerning the meaning of "substituted," or, more generally, concerning when the FDIC's removal clock begins to run in cases such as the instant case.

## B. Standards Governing Disposition of Plaintiffs' Motion for Remand

A lack of subject matter jurisdiction or "any defect in removal procedure" warrants remand. *See* 28 U.S.C. § 1447(c). *See also In Re Amoco Petroleum Additive Co.*, 964 F.2d 706, 708 (7th Cir. 1992). As noted above, 28 U.S.C. § 1446 generally defines the procedure for removal.

On a motion for remand, the party seeking removal has the burden of establishing the district court's jurisdiction and the propriety of the removal. *See Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) (the party seeking a federal forum has the burden of establishing that jurisdiction in the federal courts is appropriate); *P.P. Farmers' Elevator Co. v. Farmers Mutual Ins. Co.*, 395 F.2d 546, 548 (7th Cir. 1968) ("The burden of proof as to any controverted material issue is upon the party who removed to show that the suit was properly removed") (internal quotations and citation omitted). "The removal statutes should be strictly construed against removal and all doubts should be resolved in favor of remand."

---

[4] In its prior incarnation, the provision stated in pertinent part, "[the FDIC] may without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court." It did not set forth a separate time limit applicable to such removals, and, therefore, the thirty-day period established in section 1446(b) governed.

*Sheridan v. Flynn*, No. 03 C 5170, 2003 U.S. Dist. LEXIS 17440, at *8-9 (N.D. Ill. Sept. 30, 2003) (internal quotations and citations omitted). *See also Mountain Ridge State Bank v. Investor Funding Corp.*, 763 F.Supp. 1282, 1288 (D.N.J. 1991).

For jurisdictional purposes, plaintiffs and the FDIC agree that the FDIC is a party to the underlying suit (whether it became so automatically by virtue of the FDIC's appointment as Receiver for Superior, as plaintiffs contend, or effective the FDIC's filing of its petition to intervene in the state court action, as the FDIC contends). Thus, there is no real dispute but that this court has jurisdiction.[5] Plaintiffs' motion for remand challenges the removal only on the grounds of its alleged defect of untimeliness.

### C. Conflicting Authority Concerning When The Clock Begins to Run on the FDIC's Removal Time Period

The question of when the removal clock begins to run for the FDIC where a financial institution goes into receivership following the commencement of litigation to which it is a party is unsettled. Federal courts have reached different conclusions regarding whether removal is timely if the notice of removal is filed within ninety days of formal intervention, but more than ninety days after the FDIC's appointment as receiver.[6] The Seventh Circuit has not yet addressed

---

[5] Although the FDIC purports to dispute this court's jurisdiction in advancing its alternative argument that the claims against it and Superior should be dismissed because both the federal and state courts lack jurisdiction over plaintiffs' claims, its contention in that regard flatly contradicts its express concession of this court's jurisdiction. *See* FDIC Br., pp. 3-4. In fact, the FDIC's first line of defense against plaintiffs' motion for remand is its contention that it has "established the jurisdiction of this court." (FDIC Br., p. 3). Moreover, as addressed *infra* in sub-section (E), the FDIC's half-hearted contention regarding the absence of jurisdiction in this court and the state court is meritless.

[6] Numerous courts have commented on FIRREA's lack of overall clarity. The Supreme Court of Illinois rather colorfully characterized the statute as "a veritable Escher print set to words, complete with waterfalls that flow backwards." *Armstrong v. RTC*, 157 Ill.2d 49, 56-57 (1993). The First Circuit noted that "FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses - a veritable jungle of linguistic fronds and brambles.

this issue. Resolution of the issue hinges upon the proper meaning of the word "substituted," as used in section 1819. It is complicated by the fact that the relevant case authority straddles the 1991 amendment that added the language at issue. It is against the backdrop of both the pre-and-post-amendment authority that this court must construe the statute.

1. **Plaintiffs' Argument that the Removal Clock Begins to Run Upon the FDIC's Appointment as Receiver**

Plaintiffs argue that the FDIC's notice of removal was untimely, as it was filed outside of the ninety-day period following its appointment as Receiver for Superior on July 27, 2001. In support of their proposed interpretation of the statute, plaintiffs first point to the substantial pre-amendment case authority concerning the FDIC's automatic status as a "party" upon and by virtue of its appointment as receiver. Indeed, numerous courts have held that the FDIC becomes a party, without formal intervention, in all existing lawsuits against a bank on the date of its appointment as the receiver for that bank. *See, e.g., Woburn Five Cents Sav. Bank v. Hicks*, 930 F.2d 965, 968-971 (1st Cir. 1991) (holding that the FDIC was full party as a matter of law as of the time of its appointment as receiver); *Lazuka v. FDIC*, 931 F.2d 1530, 1537 (11th Cir. 1991) (concluding that the FDIC may seek to remove case upon its appointment as receiver for a failed banking institution that is party to the case); *Farina v. Mission Investment Trust*, 615 F.2d 1068, 1074-75 & n.19 (5th Cir. 1980) (affirming existence of federal jurisdiction based upon presence of the FDIC as a receiver or successor in interest). *Cf., Yankee Bank for Finance and Savings,*

---

In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising – it is inevitable." *Marquis v. FDIC*, 965 F.2d 1148, 1151 (1st Cir. 1992). Extending the dialogue (and the metaphor), another court noted that, "[a]lthough numerous courts have blazed trails through FIRREA's jungle of linguistic fronds and brambles, [] all but the most well traveled of these routes are hopelessly overgrown with conflicting interpretations." *Espinosa v. DeVasto*, 818 F.Supp. 438, 440 (D. Mass. 1993) (internal quotations and citation omitted).

*FSB v. Hanover Square Associates-One Limited Partnership*, 693 F.Supp. 1400 (N.D.N.Y. 1988) (concluding that when the FDIC is appointed as receiver for a failed banking institution, it becomes a real party in interest, but should formally move to substitute and obtain an order permitting the same before removing case to federal court; where the FDIC fails to do so prior to filing notice of removal, the district court may consider the notice of removal as a motion to intervene, and, therefore, the court possesses subject matter jurisdiction).

Plaintiffs further contend, as the First and Eleventh Circuits held prior to the 1991 amendment, that the removal clock should begin to tick on the date of the FDIC's appointment as receiver for a party to the case. *See Woburn*, 930 F.2d at 969 (holding that the thirty-day limitations period established in 28 U.S.C. §1446(b) began to run on the date of the FDIC's appointment; it would elevate form over substance to delay the effect of the change until the FDIC has formally sought to substitute for the party); *Lazuka*, 931 F.2d at 1537 (holding that limitations the period on the FDIC's right to remove state court action began to run "upon its receipt of notice that it has been appointed as receiver," which is the first paper informing the FDIC of the removability of the case). Several district courts, as well, reached the same conclusion prior to the 1991 amendment. *See FDIC v. Generes*, 650 F.Supp. 66 (N.D. Ill. 1986) (holding that the FDIC's deadline for removal began to run as of when it became the real party in interest in a pending case and not on the much later date on which it was formally substituted); *Mountain Ridge*, 763 F.Supp. at 1288, 1290 & n.13 (concluding that although the order appointing the FDIC may "not mention any specific litigation,"such appointment places the FDIC on notice that it may remove actions pursuant to section 1819 and "the FDIC should exercise additional care to ensure that cases are removed promptly").

Those courts looked to the general Federal statutory framework for removal (including the underlying Congressional intent) and practical concerns in concluding that the FDIC's appointment, itself, should start the removal clock, rather than any subsequent formal intervention by the FDIC. The Seventh Circuit has noted that the purpose of section 1446(b)'s limitations period on removal is twofold:

> [T]o deprive the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and to prevent the delay and waste of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, may have taken place in the first court.

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Association*, 668 F.2d 962, 965 (7th Cir. 1982). Building upon its preliminary conclusion that the FDIC became a full party as a matter of law at the time of its appointment, the court in *Woburn* was primarily motivated by these concerns – *i.e.*, guarding against undue waste of judicial resources and delay of the litigation, as well as the possibility that the FDIC might engage in forum shopping.

The *Woburn* court explained, "The longer a party waits to remove, the greater the opportunity for costly – and ultimately meaningless – state court efforts to advance the litigation." *Woburn*, 930 F.2d at 970. Further, the First Circuit noted its concern that if formal intervention were required to trigger the removal clock, the FDIC could manipulate the process to engage in forum shopping. It explained, "If state court litigation was proceeding well, then [the FDIC] could lie behind the log and do nothing. If the litigation was turning sour, then [the FDIC] could substitute counsel, file its plea in intervention, and remove to federal court." *Woburn*, 930 F.2d at 971 (internal quotations and citation omitted).

-10-

In *Generes*, Judge Shadur was motivated by the same twin concerns. There, the FDIC had intervened two years after all interest in the lawsuit was assigned to it. The bank, however, continued to prosecute the case, notwithstanding that it technically did not have any standing. The FDIC intervened in that case only after a dispositive motion was filed against the bank. In concluding that the removal clock began to run when the FDIC became the real party in interest, Judge Shadur sought to guard against the unfair tactical advantage that would accrue to the FDIC if the time limit on removal did not begin to run at the time and instead began to run when the FDIC subsequently decided to formally intervene. *See Generes*, 650 F.Supp. at 68. In the alternative, Judge Shadur concluded that the failed bank's litigation of the state court case could only have been on behalf of the FDIC, "doing its bidding as its . . . nominee," which would have effected a waiver of the FDIC's right of removal. *Generes*, 650 F.Supp. at 68-69.

Several decisions issued following the 1991 amendment extended these cases and the principles they established to the question at hand – that is, when the removal clock should begin to run on the FDIC or, more specifically, what constitutes "substitution" within the meaning of section 1819, when a bank that is party to litigation goes into receivership during the pendency of the litigation. In *FDIC v. Wissel & Sons Constr. Co.*, 881 F.Supp. 119 (D.N.J. 1995), the district court held that the removal period commences when the FDIC is appointed receiver for a bank that was a defendant in the state action.[7] The court noted first that the statute does not explicitly

---

[7] In *Wissel*, the court noted that the FDIC took part in the civil action shortly after its appointment as receiver and thus had notice of the action. However, the court also echoed language in *Mountain Ridge* noting that, although the appointment order may not identify particular actions to which the bank was a party, the appointment "places the FDIC on notice that it may remove an action pursuant to section 1819 and 'the FDIC should exercise care to ensure that cases are removed promptly.'" *Wissel*, 881 F.Supp. at 124-25 (*quoting Mountain Ridge*, 763 F.Supp. at 1290 & n.13).

require formal substitution. *Wissel*, 881 F.Supp. at 125 (citation omitted). The court then examined pre-amendment authority bearing upon the question and concluded that, with its December 1991 amendment to section 1819, Congress could not have intended that the removal would not commence until formal substitution. The court explained, "Interpreting section [1819(b)(2)(B)] as the FDIC suggests, to require 'formal' substitution to trigger the ninety day limitations period, is inconsistent with general Federal removal jurisdiction and creates the potential for delay and inefficient resolution of disputes, as well as forum shopping. Accordingly, such interpretation is rejected." *Wissel*, 881 F.Supp. at 126.

In a less comprehensive analysis, the district court in *Espinosa v. DeVasto*, 818 F.Supp. 438, 443 (D. Mass. 1993), relied *Woburn* to reach the same result. It concluded that "the FDIC is deemed to be substituted as a party at the time of its appointment as receiver" and, therefore, that the ninety-day period set forth in section 1819(b)(2)(B) begins to run as of that time. *Espinosa*, 818 F.Supp. at 443 (internal quotations and citations omitted).

### 2. The FDIC's Argument that the Removal Clock Begins to Run Only After the FDIC Has Formally Intervened

Conversely, the FDIC argues that the deadline for removal is triggered by the bringing of an action against the FDIC or its "substitution," meaning its formal intervention, as a party in an action. It claims that the limitations period here began to run when the FDIC filed its appearance and petition to intervene in the state court action on February 5, 2004. The FDIC cites two Fifth Circuit cases, as well as district court cases, in support of its argument that, pursuant to section 1819(b)(2)(B), the FDIC should not be considered a party for removal limitations purposes until it has formally intervened in the state court action.

-12-

In *FDIC v. Loyd*, 955 F.2d 316, 327 (5th Cir. 1992), the Fifth Circuit held that the FDIC must have made an appearance (*i.e.*, sought to intervene) in the state court case before the thirty-day limitations period set forth in section 1446(b) began to run, because prior to that time it was not a "party." However, as noted by *Loyd*'s dissent, the *Loyd* majority relied upon only three district court cases to support its conclusion that the limitations period should begin to run upon the FDIC's formal intervention, rather than upon its appointment as receiver. *See Loyd*, 955 F.2d at 325, 330 & n.1. The dissent further noted that all three district court cases were penned by the same Texas district court judge and relied upon an interpretation of the First Circuit's decision in *FDIC v. Otero*, 598 F.2d 627 (1st Cir. 1979), that has since been rejected by the First Circuit, itself. *See Loyd*, 955 F.2d at 330 & n.1. In *Woburn*, the First Circuit rejected application of *Otero*'s holding in the relevant context, explaining that it is instead restricted to cases in which the FDIC becomes involved in litigation through a corporate act (rather than through appointment as receiver). *Woburn*, 930 F.2d at 969. Setting aside this faulty analysis, the Fifth Circuit did not support its holding with any substantial discussion of the legislative intent or the policy concerns addressed by the courts who have reached the opposite conclusion. *See supra* sub-section (B).

To justify its decision, the court suggested that its approach was preferable to that embraced by the First and Eleventh Circuits because the latter "needlessly differentiates the procedural rights of the parties" by starting the clock at different times as against the FDIC and other parties. *Loyd*, 955 F.2d at 328. Moreover, it noted that it was not "practical" or in the public interest "to require the FDIC to determine the best management for every single pending case in a total of thirty days." *Id.* Finally, the court stated that it did "not share the concern . . . that the FDIC might 'lie behind the log,' only later to enter the case unfairly and remove it, to the

-13-

detriment of the other parties." *Id.* (*quoting Woburn,* 930 F.2d at 971). In support of that

statement, the court noted that the "opposing party can force the FDIC's hand at any point in the

proceeding by exercising its option of bringing the FDIC into the case." *Loyd,* 955 F.2d at 328.

Subsequently, in *Diaz v. McAllen State Bank,* 975 F.2d 1145, 1148 (5th Cir. 1992), the

Fifth Circuit relied upon and extended *Loyd*'s holding to hold that the ninety-day limitations

period established in section 1819 begins to run on the date on which the FDIC intervenes, not the

date of its appointment. The court asserted that this result was dictated by the statute, but did not

engage in any analysis of why "substitution" necessarily meant formal intervention. *See Diaz,* 975

F.2d at 1147-48. *See also Castleberry v. Goldome Credit Corp.,* 969 F.Supp. 705, 709 (M.D. Ala.

1997) (the FDIC's right of removal did not arise until the failed bank-defendant's co-defendant

cross-claimed against it and joined the FDIC, rather than arising at the time of the FDIC's

appointment as receiver for the failed bank-defendant) (citing 28 U.S.C. § 1819 and *FDIC v. S & I*

*85-1, Ltd.,* 22 F.3d 1070, 1073-74 (11th Cir. 1994));[8] *McDougald v. FDIC,* 848 F.Supp. 1073,

1075 (D. Mass 1994) (deeming the ninety-day period to begin when an action has been filed

against the FDIC as a party or when it has been substituted as a party; "although Congress could

have written the amendment to provide that the FDIC could remove ninety days after it was

appointed as receiver, it had not chosen to do so").

---

[8] The Eleventh Circuit concluded in *S & I 85-1* that section 1819 abrogated *Lazuka* insofar as it established "the beginning date for the running of the ninety-day period – the date an action, suit, or proceeding is filed against FDIC or the date FDIC is substituted as a party, as opposed to the date FDIC is appointed receiver." *See S & I, 85-1,* 22 F.3d at 1073-74. In that case, the FDIC had filed an action in state court against the defendants and then subsequently sought removal after the defendants counter-claimed, which the court found renewed the FDIC's removal rights. The court's dicta concerning section 1819's purported abrogation of *Lazuka* was not accompanied by any analysis of why that was the case (*i.e.,* why "substituted" should be interpreted to not include the FDIC's appointment as a receiver).

### D. The FDIC's Defective Removal of This Action

Lacking explicit guidance from the Seventh Circuit or the statute as to the proper means of calculating the ninety-day removal period applicable herein, this court must render its decision only with the benefit of the competing interpretations rendered by the federal courts that have examined the issue thus far. The court concludes that the reasoning employed by the courts in the cases holding that the limitations period for the FDIC's removal begins to run at the time of its appointment as receiver are more persuasive than the cases relied upon by the FDIC (*i.e.*, holding that only formal intervention triggers the limitations period).[9] In contrast, the cases cited by the FDIC do not contain sufficient analysis to convince the court to interpret "substituted" in the narrow manner suggested by the FDIC. Thus, the court concludes that the FDIC's notice of removal was filed in an untimely manner, as it was filed far beyond the ninety-day period following its appointment as Receiver for Superior.

_____

[9] The FDIC's criticism of plaintiffs' reliance upon *Generes* and *Woburn*, largely on the basis of their pre-amendment vintage, is unavailing. The 1991 amendment's addition of language concerning "substitution" does not explicitly or directly bear upon any of the relevant analysis set forth by the courts in those cases. If anything, this court would assume that Congress was aware of the judicial construction accorded to the removal period in relation to the FDIC's appointment date in a given case. The FDIC also attacks *Generes* on the grounds that it "contains reasoning that is not supported by any authority, statutory or otherwise." (FDIC Br., p. 7). In fact, on its face, *Generes* relies upon solid statutory and decisional authority, and this court finds its logic equally persuasive in the wake of the 1991amendment. The FDIC also claims that there are "no circumstances under the statute that would allow the failed banking institution to act on behalf of the FDIC" and, thus, *Generes'* characterization of the failed banking institution as the "nominee" of the FDIC. (FDIC Br., pp. 7-8). Here, the FDIC misses the mark. First, that rationale was provided as an alternative basis for Judge Shadur's decision. In any event, Superior ceased to operate independently in July 2001 when the FDIC accepted the appointment, at which time it succeeded to all rights, titles, powers and privileges of Superior pursuant to 12 U.S.C. § 1821(c)(3)(A). Finally, the FDIC seeks to distinguish *Generes* on grounds that there, the FDIC did not offer any explanation as to why it waited so long after its appointment to remove, whereas the FDIC "has offered an explanation in this case." (FDIC Br., p. 12). As addressed herein, the FDIC's "explanation" has not been offered in any evidentiary form acceptable under the Federal Rules and, moreover, does not pass the straight face test. Even if it did, as explained below, the FDIC's actual notice is not relevant to the court's disposition of plaintiffs' motion.

First, this conclusion gives effect to the Congressional intent that removal take place as early as possible in the litigation of a case in order to prevent delay and waste of judicial resources. *See Woburn*, 930 F.2d at 970; *Wissel*, 881 F.Supp. at 125-26. *See also Wilson*, 668 F.2d at 965. That concern is seriously implicated here, where after five years of litigation, the case was ready and assigned out for trial as of the time that Superior first notified plaintiffs of the receivership. To allow FDIC to remove the case approximately two and a half years after it was appointed receiver would result in the terribly wasteful discarding of the parties' five years of litigation and the concomitant effort expended by the state court in presiding over the case throughout that time.

Secondly, and relatedly, the FDIC was in the best position to avoid such a waste of judicial resources and accompanying delay in the litigation. "It would not put a great burden on the government corporation to contact a bank's legal department or retained lawyers shortly after appointment in order to assess pending litigation and make a decision on removal." *Jackson v. American Sav. Mortgage Corp.*, 924 F.2d 195, 197-98 (11th Cir. 1991). Here, the FDIC claims that it has proven its lack of notice of the underlying lawsuit until November 2003. Plaintiffs counter that the FDIC has the burden of establishing the propriety of removal and has only made bare allegations in its brief professing its lack of knowledge and has failed to produce any competent evidence to support those allegations, thus failing to meet its burden of proof. *See, e.g.*, FDIC Br., p. 7 n.2 ("To be clear, the FDIC was not aware of this case until November 2003. A copy of the letter from the FDIC to Plaintiffs dated November 18, 2003 that explains that the FDIC had recently learned of the existence of the lawsuit is attached as Exhibit 2. Plaintiffs

-16-

acknowledge said letter on page 2 of its [sic] Motion.").[10]  What is not clear are the efforts, if any, the FDIC undertook (upon becoming Receiver) to ascertain the existence of lawsuits against Superior.  However, it is not necessary for this court to decide whether the FDIC had (or should have had) notice of the lawsuit, as it has found that the FDIC was "substituted" within the meaning of section 1819 upon its appointment as Receiver for Superior.  This court concurs with others that have essentially held the FDIC responsible for its own notice of pending lawsuits involving banks for which it is appointed as receiver.  *See  Woburn*, 930 F.2d at 970 ("When the FDIC is the removing party . . . there is no possible uncertainty about the first notice of removability.  The FDIC knows from the moment it is appointed receiver that it has the right to remove under FIRREA....."); *Jackson v. American Sav. Mortgage Corp.*, 924 F.2d 195, 197-98 (11th Cir. 1991) ("It would not put a great burden on the government corporation to contact a bank's legal department or retained lawyers shortly after appointment in order to assess pending litigation and make a decision on removal").  *See also  Mountain Ridge*, 763 F.Supp. at 1288, 1290 & n.13.  *Cf., Coit Independent Joint Venture v. FSLIC*, 489 U.S. 561 (1989) (concluding that in cases where suit has already been filed against a savings and loan before the FSLIC is appointed receiver, the FSLIC receives notices of those claims when it steps into the shoes of the failed institution and takes control of its assets).

Finally, and relatedly, this conclusion is required to guard against an unfair tactical

---

[10] In this vein, the FDIC also argues that it is not its removal that has caused the delay of this case (which was, by all accounts, ready for trial), but "the realization that Superior was a failed banking institution." (FDIC Br., p. 12).  The FDIC's disingenuous but unmistakable implication here is that the FDIC and/or Superior did not "realize" that the bank was in receivership before it was two and a half years into its receivership.  This line of argument is unavailing.  Even if that were not the case, the FDIC's contention that it did not know for two and a half years of a pending claim seeking damages in excess of $25 million dollars truly strains credibility.

advantage, which could occur if the FDIC is permitted to "lie behind the log" during the pendency of the state court proceeding and remove the case to federal court if and when its litigation position goes south. *Woburn*, 930 F.2d at 971. *See Generes*, 650 F.Supp. at 68. *See also Jackson*, 924 F.2d at 197-98 ("If the date that the government corporation becomes a 'party' for removal purposes were the date the corporation actually intervenes in a case or the date another party obtains an order making it a party, the window for removal might be extended indefinitely. The government could let a case proceed in state court as long as it appeared the result would be favorable, and then intervene and remove to federal court should the case take an unfavorable turn. Such a 'wait and see' ability gives the government corporation greater power than necessary to carry out its duties.") The interpretation adopted here should serve to motivate the FDIC to diligently investigate the existence of pending litigation upon becoming a receiver.

Here, the chronology of the state court litigation strongly suggests precisely this kind of strategy on the part of the FDIC. The FDIC was appointed as Receiver for Superior for nearly two and a half years before anyone informed plaintiffs of that fact. On the eve of trial, and following five years of pre-trial litigation, Superior – which indisputably did not operate independently – filed a motion to dismiss on the grounds of its status as a non-entity. Plaintiffs argue that if Superior had been successful in its motion, plaintiffs would have been forced to sue the FDIC – a contingency that the FDIC claims herein would "renew" its removal rights. *See, e.g., Yankee Bank*, 693 F.Supp. at 1411. However, Superior was not successful, as the circuit court denied its motion to dismiss. In so doing, the circuit court also decided (in the face of Superior's argument to the contrary) that it had jurisdiction over plaintiffs' action notwithstanding the pendency of plaintiffs' administrative law claims. Then, on the first scheduled day of trial, plaintiffs' counsel

was informed that the FDIC had been appointed as Receiver in July 2001, and the trial was continued. The FDIC quickly filed its motion to intervene in the circuit court and its notice of removal in this court. Taken together, these facts give credence to the concerns expressed by the First Circuit and Judge Shadur; it appears that the FDIC is engaged in dilatory tactics by seeking an escape from the state court litigation following the completion of five years of discovery and on the eve of trial.[11] Even if the FDIC does not harbor this intent, this court will not create the possibility for that kind of abuse by deeming its notice of removal timely.

### E. The State Court's Concurrent Jurisdiction Over Plaintiffs' Claims

In opposing plaintiffs' motion for remand, the FDIC asks this court in the alternative to dismiss it and Superior from the case for lack of jurisdiction and then to remand the remainder of the case to the state court. Specifically, the FDIC contends that "there is no basis for any court's jurisdiction until the exhaustion of administrative remedies." (FDIC Br., p. 11). It is not lost on this court that the notice of removal was not filed here until after this argument was presented to and rejected by the state court. The FDIC's last-ditch effort to avoid and/or delay adjudication of plaintiffs' claims fails, as neither the federal courts nor the state courts are deprived of jurisdiction over the claims asserted herein by virtue of the fact that a parallel administrative proceeding is pending at the FDIC.[12]

---

[11] Although the FDIC contends that this case is distinguishable because there is "no evidence that the FDIC will obtain some tactical advantage by removing the case at this time, and there is no evidence of any adverse event in the state court proceedings that the FDIC is trying to avoid" (*see* FDIC Br., p. 7), its contention flies in the face of the undisputed chronology of the state court case and falls flat.

[12] As a preliminary matter, the court notes that the FDIC's bid for dismissal of itself and Superior based on its claim that this court is lacking jurisdiction is: (1) improper, in that it was asserted in a response to a motion for remand, rather than in the form required by the Federal Rules; (2) bizarre, in light of the fact that it was the FDIC who sought to remove the case to this court; and (3) wholly contradictory *vis a vis* its chief contention in opposing plaintiffs' motion for remand, which is that it "has

-19-

Pursuant to FIRREA, a creditor who has a claim against the failed institution must participate in the administrative claims review process. In the absence of pre-appointment litigation on the claim, the process culminates either with a determination by the FDIC concerning whether the claim shall be allowed or disallowed or the passage of the 180 days in which the FDIC may make such a determination. After that time, the claimant has 60 days within which it may either request administrative review or file suit on the claim in the appropriate federal district court. *See* 12 U.S.C. § 1821(d)(3)-(6).

However, as the state court judge who presided over this action concluded just two weeks before the FDIC sought to remove the action to federal court (*see* FDIC Exh. 3, pp. 12-13), jurisdiction over pre-appointment lawsuits is appropriate in and concurrent between state and federal courts. *See Armstrong v. RTC*, 157 Ill.2d 49, 54-60 (1993) (where Resolution Trust Corp. ("RTC") was appointed receiver during the pendency of an action against the savings and loan in receivership, holding that FIRREA does not strip state courts of jurisdiction; state and federal courts share concurrent jurisdiction). *See also RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indemnity*, 169 F.3d 448, 454 (7th Cir. 1999) (noting that state courts have concurrent jurisdiction over FIRREA claims and that "they routinely decide such cases"); *Marc Development Co. v. FDIC*, 992 F.2d 1503, 1507 (10th Cir. 1993), *vacated as moot when parties settled during rehearing*, 12 F.3d 948 (10th Cir. 1993) (concluding that federal courts retain subject matter jurisdiction in litigation filed prior to the appointment of the receiver; if plaintiff files claim with the FDIC, claims procedure and litigation may continue concurrently); *Marquis v. FDIC*, 965 F.2d 1148, 1151-54 (1st Cir. 1992) (holding that federal courts retain subject matter

established this court's jurisdiction." *See* FDIC Br., pp. 3-4.

-20-

jurisdiction over actions pending against failed financial institutions once the FDIC has been appointed as receiver); *Apostol v. Best Bank*, No. 96 C 6966, 1998 U.S. Dist. LEXIS 20729, at *5-9 (N.D. Ill. Dec. 31, 1998) (concluding that the appointment of a receiver does not divest state or federal courts of jurisdiction in a lawsuit against a bank filed before the appointment of the receiver); *FDIC v. Glynn*, Nos. 91 C 3723 & 91 C 3726, 1993 U.S. Dist. LEXIS 14562, at *10-11 (N.D. Ill. Oct. 15 1993) (concluding that courts' jurisdiction over pre-receivership lawsuits is continuous throughout the administrative review process and dismissal is not appropriate).

These cases rest upon sound analysis of the relevant statutory provisions (which will not be unnecessarily replicated herein), and they represent the well-settled law. *See also* 12 U.S.C. § 1821(d)(5)(F)(ii) (providing that the filing of administrative claim with the receiver "shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver") & 12 U.S.C. § 1821(d)(12) (providing that after the appointment of a receiver, the receiver may request – and the court should, in response, grant – a stay for a period not to exceed ninety days in any action or proceeding to which such institution is or becomes a party). The FDIC has not cited any case supporting the result it seeks.

Most courts agree that it is appropriate to stay the judicial action pending resolution of the pending administrative claim review process. *See, e.g., Marquis*, 965 F.2d at 1155 (concluding that federal courts ordinarily should stay proceedings so as to permit exhaustion of the mandatory administrative claims review process); *Apostol*, 1998 U.S. Dist. LEXIS 20729, at *5-9 (granting stay pending completion of administrative review). However, because remand is appropriate, there is no federal court action for this court to stay.

## III.  Conclusion

For the foregoing reasons, plaintiffs' motion for remand is granted, and the case is remanded forthwith to the Circuit Court of Cook County.

**Enter:**

David H. Coar
**United States District Judge**

**Dated: July 14, 2004**